But I've been coming to this court for a number of years, and I never noticed there's a jail cell down the hall. It's for Judge Mitch's courtroom, I guess. So you all behave today, I'm sure. Mr. Pinkins, are you ready? May it please the Court. My name is Howard Pinkins from the Federal Public Defender, and I represent Ian Bowline. After this Court reversed Mr. Bowline's convictions for a drug distribution conspiracy and a travel act violation, the government charged him with 22 substantive counts that dramatically increased his maximum exposure. Under this Court's decision in United States v. Wood, the government's actions was presumptively vindictive, and because it has not rebutted the presumption, this Court should grant Mr. Bowline relief for plain error. Do you focus on the fact that the maximum possible statutory benefit increased? Correct. If you look at the guidelines, which gives you a more realistic view of what he faces, it's actually lower, significantly lower, is it not? It did drop dramatically under the guidelines, but the government was still able to seek, and Mr. Bowline was exposed to, dramatically increased penalties, 88 years instead of the 25 under the drug conspiracy and the travel act. But we're using the length of sentence as a way to measure the vindictiveness of the prosecution. So isn't the correct measure of that objective fact, if you're looking at what would motivate the prosecutor, wouldn't you look at what the realistic expectation is rather than the theoretical expectation of every sentence being consecutive? No, and particularly not in this case. I mean, the statutory maxims are still what Mr. Bowline was exposed to, and it still is possible for the district court to sentence to that. And here, at sentencing, the government sought not a guideline sentence, but a sentence of 108 months instead of the 16-month top of the guidelines. So the government here was – What had been the sentence before? Excuse me? What had been the sentence imposed before? That's correct. No, wait, what had been? Oh, I'm sorry, 108 months. So the same sentence. They sought the same sentence. They could have sought more. They said, look, there's 14,000 pills involved here. Opioid addiction is a terrible thing. He got these other people started. He's the most culpable. He should get a harsh sentence. They could well have argued for more than that. Now, it's possible, of course, that the district court might have felt bound not to give something above 108 months or risk itself having vindictively sentenced Mr. Bowline, but those are two different things. He has a due process right to be protected against a vindictive prosecution and vindictiveness by the sentencing judge. And here they filed 22 charges for no justifiable reason based on the same conduct and that exposed him to dramatically more time than he was facing the first time around. If your argument prevails, won't that encourage prosecutors in the future to just throw the book at somebody? Any possible offense that could have been charged, they would have charged, they would have been encouraged in this case to include the charges they're now filing, to file them originally. Isn't that a concern that one circuit was concerned about? I'm sorry, I don't remember the name of the case, but I'm sure you remember it. Isn't that a concern? Not really. I mean, first of all, it's a concern. It's a concern that already exists in this circuit under this Court's decision in Wood, which held presumptively vindictive the filing of a single charge. No, we didn't hold those presumptively vindictive. What we did is we affirmed under abuse of discretion standard the district court's determination. Isn't that a more accurate description of what happened there? Well, what this Court, that was, it was either clear or abuse of discretion standard for affirming the district court. But what this Court said was that under the circumstances there, the charging decision was inherently suspect and therefore the district court did not err. So it was looking at, the facts here directly parallel what happened in Wood. But to go back to the question of whether this would encourage prosecutors to just throw the book at somebody, there's many reasons, first of all, why prosecutors decide to bring charges or not bring certain charges. And also, what we're arguing here is that the ante was upped from the original sentencing, from the original prosecution. So if they had brought charges that totaled to less than what was brought the first time, there wouldn't have been the upping of the ante. They did not do that. They, instead of charging a drug possession conspiracy, which this Court said was available in Mr. Boland's first appeal, or instead of charging one or two or three violations of possessing the drugs, of obtaining the drugs by false prescriptions. So instead of, how many counts were there here? There were 22, two of which were dismissed on limitations grounds. Okay. So if they had brought 10 then, that would have been okay? Well, 10 would have gotten you to 40. That still is upping the ante considerably. Okay. If the maximum before 25, I suppose 6 would bring them under that. But there was – what they did here was just pile on, and there was no non-vindictive reason for them to do so here. That I just can't understand, Mr. Pincus. I mean, they got burned on a conspiracy charge the first time. Your client confesses to the substantive offenses in the first trial, and some prosecutor says, boy, that 10th circuit, I don't want to be burned a second time following a conspiracy charge. I'll just charge them with every substantive offense. I mean, it's entirely logical. I don't – I don't – where's the problem? Well, with that, we know that that's not the prosecutor's thinking from what it said in response to one of Mr. Boland's prior pleadings. It said, we have compelling evidence that more than meets our burden of proving guilty on a reasonable doubt, and his prior testimony does not detract from that. So they themselves believed that they had more than enough evidence. They had the goods on Mr. Boland. They could easily convict him. That doesn't change the calculus. I mean, whether they feel that they could prosecute him with X, if they think they will encounter less difficulty prosecuting him with Y, which, you know, given conspiracy is a different game, and apparently they got burned the first time, why not just do that? I mean, I don't understand. And to the point you were – just the colloquy you were having with Judge Hartz, when do we get into the business of micromanaging how many counts the prosecutor can bring the second time around before he ends up in a situation where we're viewing it as vindictive? I mean, we're going to sit there and count the counts to make sure that they don't equal as more than he got sentenced for last time? Well, we do go – we do get into the business of whether the empty was upped. So that's how we get into that business. If there's a rational basis for charging him the second time, and there is no other reason to believe that there was a vindictive prosecution other than the calculus of the additional charges, then I just don't see the problem. And explain to me why you refer to taking it as a given that Wood somehow maps over this case. I just don't get that. I mean, Wood – this case had a discrete dramatic change. And that discrete dramatic change was your client confessed to exactly, exactly the things they charged him with the second time. That wasn't in the first case. No, that was not in the first case. But that doesn't justify 22 charges. If they had wanted to bring a fewer number of charges and rely on his testimony, they also – the argument that – Wait, wait, wait. Stop right there. Why did they have to do that if that was a legitimate, reasonable reason to charge him differently than they did the first time? Why did they have to pause and say, well, the effect of doing this will mean that there will be more – he will be exposed to a greater statutory maximum than he was the first time? Why is that in the calculus? I mean, again, the first thing we're looking at is whether it was motivated by a vindictive person. That's right. So if the prosecutor said, I didn't need his prior testimony, which is effectively what it said in the prior pleading, then that wasn't the basis for the prosecutorial calculus. So the fact that the prosecutor admitted that that wasn't the basis for the charging decision shows that that's not what was going on here. Let me suggest this, Mr. Pickens. If you have a scenario in which I have this pile of evidence right here in which I can convict your client, and then I have his confession, I can easily say, I can convict your client, no problem. But boy, isn't this an easy way to do it. Boy, isn't this – you know, so it's not that – there's no mutual exclusivity in saying I can convict you with an easier path to convicting you based upon your confession. It is qualitatively different to have the words coming out of your client's mouth than me putting together a pile of evidence to convict your client. Right? It may be, but that's not what the prosecutor said here. The prosecutor said, I have compelling evidence that more than meets my burden of proof, and his prior testimony doesn't detract from that. Let's back up and say, was anything like that even present in the one case that you rely upon? There was here you have a dramatic change of event in the fact that your client confessed to this crime. There is nothing like that in Wood. There is not the prior testimony in Wood. That's correct. But what we need is something that would justify the charging decision. And again, the charging decision here dramatically increased his exposure. The government didn't choose to just go for something below what they obtained last time. They went to 88 years as potential exposure rather than 25. I guess the question what I'm getting at is the only reason, well, would the only reason that it mattered that he was exposed to greater sentence, would the only reason that be relevant if somehow or other there was a thing that would suggest that that was vindictive? In other words, if it was entirely rational that he had a basis to charge him with these charges, would he have to stop short of charging the maximum he could, he or she, because they didn't want to exceed the statutory maximum for the first time? If I understand the question, I think there would be if it ups the ante, and particularly here where the prosecutor says that wasn't my motivation. But back to your question about how this case maps to Wood. In Wood, this Court talked about, in Wood there was the, after a trial and an appeal, the parties were basically in the same position they had been at the start, Mr. Wood was facing the same two charges. Those charges were dismissed by the district court. The government appealed that and filed a bribery charge against the defendant. This Court said that that was inherently suspect. And that's not what we have here. We have a full completion of an appellate process, a determination, to use my words, that they got burned the first time. And so they decide at that point, only at that point, note in Wood, they didn't even have the full appellate process play out the first time when they charged him with bribery, right? Right. The second time. The second time for the bribery. Yes, that's exactly right. They did not, and this Court didn't even mention that fact in why it found there was a presumption of indictiveness. Okay. And in fact, by the time this Court had ruled, it had previously affirmed the district court's dismissal. We didn't cite this case, but it's the previous incarnation of Wood. I think it's 6F3rd 792, that it had affirmed the dismissal of the other counsel. All that was left was the bribery charge. This Court didn't refer to that at all in its opinion. And one would expect that if that mattered to the decision, it would have been at least mentioned. And what did Wood, when it said there were suspicious circumstances or suspect circumstances, what was it referring to? It was referring to the fact that the new charges were brought two years after trial here, 22 months after the first trial, that it was not based on new evidence or changed circumstances. And here again, I understand the point about prior testimony. Could I shift quickly? Sure. I get the point. I know I want you to sit down before I ask you why we have to hear this at all. I mean, there is on the face of Rule 12 a good cause language. That language has to do some work. And you made no showing before any court that there was good cause for this untimely motion. That's true. And so why doesn't that full stop on your ability to proceed here? For the reasons that the Sixth Circuit said in SOTA. The good cause language is a standard directed to the district court. You didn't make a good cause showing to the district court? We didn't. But plain error is something separate. Good cause is, do I have a legitimate excuse? Plain error is, did I not notice a legitimate issue? Did I forfeit it? And is there plain error in not allowing me to raise it on appeal? I realize those are two distinct things. But it seems to me that the way this thing would play out is you'd have to show good cause. And then if you show good cause, then we're talking about whether we do plain error or not. You didn't show good cause. Even if you say it's directed to the district court, you didn't do it there. We didn't. And there must be some consequence of that, right? There is, because if there were good cause, then we'd have de novo review on appeal. If there's not good cause, then we get plain error. Whoa, whoa, whoa. You'd have de novo review on appeal? We wouldn't be saddled with plain error review. You sure you wouldn't have clear error review? Yes. I just meant we wouldn't have a forfeited issue. We would have review in the ordinary course. Do you agree that Burke still is good law and that governs our review? No, absolutely not. Burke dealt with the prior version of Rule 12. The prior version of Rule 12 said that the failure to raise in a timely manner a motion that should be raised under Rule 12b-3 is a waiver. The new rule deletes the waiver language. Burke relied on the fact, on that waiver language and its retention nine years after Olana when the rule was amended. But the elimination of the term waiver was not intended to change the substance of the rule. The advisory committee note says new paragraph 12c-3 retains the existing standard for untimely claim. It retains the good cause standard. That's absolutely true. And it said it was meant to avoid confusion. The confusion was in the appellate courts as Soto notes in footnote 8. The confusion was because of misunderstanding of the term waiver. Because people mistakenly think that there can't be a waiver unless there's intentional relinquishment of a known right. They read Olana to say that. Olana doesn't say that. It says that it's required in some circumstances. And then mentions sometimes the defendant doesn't even have any say in the matter. The attorney doesn't. Sometimes you have to have more knowledge and so on. But that caused confusion. So they weren't changing the substance of the rule at all. They made that clear in the advisory committee note. They still left it to the courts to decide. Some circuits had plenary reviews. Some didn't. Don't worry about the time. The word was confusing people. And Burke discussed that at some length. And decided that it didn't have, that the waiver requirement in 12B, the substance of the requirement, did not allow for plenary review. Burke relied heavily on the language. It said the text of the rule requires its result. It relied on the failure to change it when the rule was amended in 2002. And relied on policy reasons that are specific to suppression motions, which this isn't. And three circuits have come to a contrary conclusion after the amendment to Rule 12. Let me talk to you specifically about 12C3. It says, but a court may consider the defense objection request if the party shows good cause. What if there isn't good cause? Doesn't that mean that the court cannot consider the defense objection or request if the party doesn't show good cause? No. It means district court. If a district court did not make a finding of good cause and still granted the motion, we would reverse for, because under 12C3, it's not allowed to consider. Unless there were plenary. No, no, no. We would reverse. The district court would err if it considered a motion without finding good cause. Isn't that correct? That's correct. Okay. Then it makes no sense to not have a good cause requirement on appeal.  Do you agree? I agree. Yes. That's the whole thrust of your argument. So why can we review something if the district court couldn't consider the motion? If there wasn't good cause for the untimely motion, then the district court is not allowed to consider it, but we can? Yes. That makes no sense. Well, if rule 12C3 is directed at district courts, which is what the Sixth Circuit held in Soto, then that is a standard for the district court. It is not an appellate standard. That is part of the confusion. I'm not convinced by Soto that it's just directed at the district court. Throughout rule 12, whenever it refers to the district court, it says the court. In 12C3, it says, but a court may consider the defense objection request if the party shows good cause. Court is defined in the rules to include appellate courts. It is, isn't it? So I would think that means that we can consider it if there's good cause. And the Sixth Circuit went through not only the advisory committee notes, but the minutes of the committee hearings. The minutes are somebody, you familiar with how that works? I mean, advisory committee notes are really considered. There's a lot of discussion of those. The minutes are, there's a staff person there who prepares minutes. Those are not intended to be binding on anyone. And if you read the discussion in Soto, it's not real clear to me. I wasn't persuaded. It's a wonderful opinion. Judge Moore is a very good judge. But that was grasping at straws to say that this wasn't intended to apply to the appellate court. It was grasping at straws, I said, to think that this doesn't apply when it says, but a court may not grant review absent good cause. The advisory committee notes certainly don't answer the question. And if we don't have Rule 12 specifically directing that plain error review is not available in some way like putting in waiver language, then the default rule should be Rule 52. No. Then you're reading, I think this was what Judge Holmes was saying, then you're reading the good cause requirement out of the rule. You're better off not raising it at all in district court than you are raising it when there's not good cause. No, because if you raise it in district court, you can get review if you show good cause. And you can also get review if there's plain error. The two standards are directed at different things. One has got a legitimate. If you make a terrible good cause argument, you're worse off than if you made no good cause argument. That's only if one assumes that on appeal you're limited to only good cause or plain error. What I'm saying is. I'm not saying you're limited to only good cause. But you at least have to show good cause. In Burke, we said sometimes you can show good cause. That's rare. Then you waive it if you don't show it. That is rare. And good cause is what's your legitimate reason for not raising it sooner? And inadvertence is not enough. But inadvertence is exactly what plain error is designed to pick up. Not the intentional relinquishment of a known right, but missing something. If you miss it by not seeing it in early enough fashion, you shouldn't be any worse off than if you just miss it in any other circumstance. Let me pursue this just one little bit more. That argument is based on the assumption that waiver requires an intentional relinquishment of a known right. And that's ordinarily the case. Yes. That's what Olano distinguished before paternity waiver. It's ordinarily the case. It's rarely the case. In fact, because the defendant weighs a lot of things that the client does, that the attorney does, without having any knowledge. Olano itself says it depends on the nature of the right. How much knowledge has the party waiving it? If you omit something in your opening brief, that may be totally inadvertent. You've waived that issue. That was an intentional relinquishment, certainly not by your client. No, and we're not saying that it has to be an intentional relinquishment by the client. What we're saying is that plain error. That's what Olano said. In the circumstances involved in Olano, it had to be by the client. He was pointing out that, well. Well, this Court often reviews something that is just missed by an attorney. There's not an intentional relinquishment by anybody. And, of course, clients are bound by the decisions of their attorneys. But their attorney, when it's a mere oversight, gets plain error. Not of course. Not of course. That was the whole point of Olano. A lot of times it has to be the client's intentional relinquishment. There are a few areas where the client has the right to make. This is one of the areas where you better make the argument before the trial starts if you're going to challenge the indictment. And if you don't, you've waived it without good cause. And just following up, Mr. Pincus, on this whole point about good cause being directed to the district court, that requirement. Well, in Vance itself, we talk about good cause. And we talk about the failure to show good cause. So it suggests to me that good cause has to have some work. At least it continues in our precedent to have some work. Footnote 5 will not deal with that point. I mean, the fact that footnote 5 says that, oh, you know, we're still under a pre-Burke regime. Well, even the language of the 2014 amendment did not change the good cause requirement. We're talking about good cause in Vance. Why doesn't that signal that it still has ongoing liability? It absolutely does. Not to the district court. We're talking about whether they made the showing to us. Well, as the court said in Soto, it would be odd for it to be in a post and you don't make a good cause showing in the first instance to the court of appeals. It's if you have good cause in district court, you can get review in the district court. You can get your motion considered in district court. If not, you're stuck with plain error review. It does give the work to good cause. Whether I'm persuaded by that and I'm not. Beyond that, the bottom line is, with all due respect to Soto, I'm looking at Vance. Vance is ours. In Vance, we're looking at the question of whether good cause was given to us. And Vance says nobody has made an argument about the continuing validity of Burke in light of the amendment in 2014 to Rule 12. And we are making that argument. I know that, but footnote 5, as I said, goes with the waiver, non-waiver point. That doesn't go with the good cause requirement. So footnote 5 in Vance does not deal with the issue of what you do with good cause. And so that whole language in Vance about how there was no argument made against Burke, fine, I get that. But that doesn't deal with this language in Vance in which we're grappling with whether the district, I mean, whether the defendant made a good cause showing to us, which you haven't done. We haven't done, and we, and there was no consideration in Vance as to whether plain error review would still be available. And we're saying that it is in light of the amendments to the 2014 rules. And you guys couldn't meet the good cause standard? We, no. Right. We ask the Court to vacate Mr. Volon's convictions and remand with instructions to dismiss the indictment. Thank you. Counsel, your appellant has used all your time. May it please the Court. Counsel, my name is Shannon Henson. I was trial counsel in Boline 1 as well as Boline 2. And I assisted Ms. Epperle in the preparation of the trial brief for the Court today. The Court began with the proposition of whether or not the district court clearly erred in holding that there was not a presumption of vindictiveness. And the Court touched on several reasons potentially for the government in deciding to file or charge the defendant as we did in the second indictment. And there's one of the many reasons behind the Court's identifying that we've also identified in the brief. But it's important to note also, and we argued it in our brief in a footnote, that not only did the defendant admit to many of these substantive counts that, in fact, under oath, he wrote those false prescriptions and had those filled, he also admitted that he did not engage in a conspiracy. So coupled with the Tenth Circuit's ruling that the government hadn't proved a conspiracy to distribute, coupled with that and the defendant's own statement that he was not involved in a conspiracy, again, looking at the rational reasons and the decisions the government could choose to charge the defendant in the indictment, we made the decision not to charge a conspiracy in part on this Circuit's decision, but also, again, with the defendant's own statements coupled with the fact he said under oath, I wasn't involved in a conspiracy. So as a trial attorney thinking about closing argument, that would be the one argument I would expect a defense attorney would say, the government wants you to believe, number one, if we charge him in a conspiracy, number one, not only did he admit to the substantive counts, so believe that, but he said he wasn't involved in a conspiracy. Now the government wants you to disbelieve that. So avoiding that legal analysis or argument, I should say, in closing, we chose to charge him as we did with the substantive counts. And it's also important to note, I suggest, as the Court referenced with respect to potential punishment at hand, and the Court may know this and I apologize, but our office, like many, we have what's called an indictment review process with senior attorneys, and we mentioned the senior attorney's meeting with respect to the charging decision in this case. We were very aware of what the guideline provision, the advisory guideline provision would be. In fact, if memory serves me right, I believe I calculated six to ten months, not accounting for the grouping that the PSR eventually came up with. It's what you're saying in the record. I'm sorry? It's what you're saying now in the record. I believe the record indicates the PSR advisory guideline range was six to ten months. Can you talk about the internal deliberations of your office? The record mentions senior attorney's meeting to come up with the charging decision, but we don't mention the guideline or internal review policy. I apologize, Your Honor. But nonetheless, all of that went into the decision to charge the defendant as we did, and just to remind the Court, and I know the Court knows this, we were tasked with, the case wasn't dismissed by the Tenth Circuit. It was reversed and remanded. So we, in essence, were told, without being told, that this defendant not only committed conspiracy to obtain by fraud, but in essence, charged him, if you so desire. And that's what we chose to do, and that's what we did. There was no punitive decision or rationale in the indictment. Well, nothing cute about the process. I don't accept the premise that we told you to charge anybody. Okay. That's your decision. Yes, Your Honor. Executive branch. Yes, Your Honor. I apologize for that. But nonetheless, that went into the rationale and the charging decision for the indictment as it was presented to the grand jury and ultimately to the jury itself. Now, with respect to Rule 12, if the Court would like to delve into that thorny issue, I would suggest, as the Court noted, this may not be right for this Court. No good cause has even been presented. The appellant admitted it in its brief. In the motion for vindictive prosecution on behalf of the defendant, there was no good cause shown. As memory serves me right, there was no good cause offered or proffered orally by the defendant at the time. So there's really nothing to review, I would suggest. If there were some type of plain error analysis, if you will, I don't believe there would be a sufficient record. How can you find plain error that no good cause was shown when no good cause has been shown? So it may be a little presumptuous, arguably, to be here arguing plain error applies for a good cause finding when no good cause was shown. So what happens if they make a good cause argument below and the district court says, Nope, you didn't meet it, so I'm not dismissing. Then what happens up here? There's no review. It would be waived. They can't challenge the district court's decision that there was no good cause? I would suggest not in this circuit, Your Honor. Going back to Vance. How can you say that? Well, if you go back to Vance and you look at footnote five, and again, I realize that's arguably dicta. In footnote five of the Tenth Circuit, when commenting on the advisory committee note, which I'm not excited to do based on the previous argument, the court in the fifth footnote states that the intent of the drafters in removing the waiver language, if you will, was not to render failures to file timely motions subject to plain error. So, again, it's arguably dicta. Right, but we're talking about a situation there where they raised it below, they made the good cause argument below, and they lost. I mean, wouldn't we review that for clear error? Wouldn't they be able to bring that up and we'd get clear error review on that? The timeliness of the motion, Your Honor, respectfully, no. I believe in this circuit, at this point in time, it would be waived. Now, if the court … At least as I understood your question, you're not answering it. I'm sorry. The question was, wouldn't we be able to review the district court's determination that there was no good cause for being untimely? Surely we can review that. Respectfully, it would appear under Vance, quoting Burke, that the failure to comply with the timeliness requirement results in waiver. Unless you show good cause. So it seems like you should still be able to challenge the district court's decision that there was no good cause. If that were the case, I would submit, based on the Soto decision, where I believe they found the good cause determination would then be an abusive discretion standard. I believe that was the argument in Soto. So if this court were to review a good cause finding, I would argue at least the way I interpret Soto, it would be some type of abusive discretion, which I would argue would, based on the court's positioning, would be a proper standard. The court is well aware of their case, their docketing, their motion deadlines, the arguments of the parties. I would suggest that they're in the best position to argue good cause. Let me ask you a little different question. What if they presented a good cause argument to the district court, and the district court said, yes, you've shown good cause, but you disagreed? But the government, yes. Right. Could you get review of that? If the defendant were able to do so under some type of abusive discretion, I would argue the government would as well. Although, for practical purposes, that probably wouldn't happen. Just so we can get a clean record on this point, footnote 5, I understand from your brief that footnote 5 in Vance establishes that Vance actually is holding that Burke continues to be the law. Now, in fact, is that what is going on in footnote 5? I mean, footnote 5 says there's been no argument made that Burke is not the law, so we're following it. Mr. Pincus says, oh, I'm arguing Burke is not the law. So Vance doesn't bind us on the Burke question, does it? It's true, Your Honor. That statement is at the tail end or the bottom of footnote 5, if you will, with respect to Vance. And words matter. It's in there. Words matter. And if I could talk specifically to footnote 5 again, three times in the footnote, the court uses the phrase, make clear, regarding Burke. And that could be interpreted in, I guess, future arguments to make this clear. It says in footnote 5, Burke makes clear, and we've talked about this, to fail to file a timely motion, doesn't amount to waiver because of the term with respect to timeliness of motions suppressed and things of that nature. In footnote 5, the term make clear also is applied to the advisory committee note when it talks about the intents of the drafters in removing waiver. And it says that, again, that the failure to file a timely motion doesn't subject the failure to plain error. The third make clear, and this is important, I suggest, again, Burke is to make clear a finding of intent on part of the defendant, not necessary for the Rule 12's application. So footnote 5, I realize, is dicta. It seems there is some logic, if you will, behind advising us of how to proceed in the future. It's not clear cut. I would agree with the court. So the question of whether we apply waiver or not is an open question. We're talking about that, right? I mean, because it's not a situation where Burke's, Vance's, Vance tells us we're still bound by Burke unequivocally. Therefore, when we're here, any argument Mr. Pincus is making to the contrary is just irrelevant because Burke governs. That's not the world we're in, right? Correct. Vance seems to be conflicting with itself. When it makes the statement outside the footnote, again, failure to comply with timeliness results in waiver. Well, the footnote, you refer to the footnote as dicta. The footnote is explaining why it's still following Burke. Yes. And so I don't, you know, all right, you're following Burke. I get it. You explain why Burke applies in that case. I get it. But footnote 5, in explaining why they're following Burke, tells us that it's because nobody's argued anything to the contrary. It does raise that. Yes, it does. Okay. And I have three minutes left. If there are any other questions, I'd be glad to answer them for the Court. Thank you, Counsel. Thank you. Your time's expired, and I don't think there's any need to do that. Okay. Thank you, Counsel. A very interesting case. The case is submitted. Counsel are excused. We'll turn to our next case.